IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 09-cv-02571-RBJ-BNB

SCOTT HART,

      Plaintiff,

v.

CAPGEMINI U.S. LLC WELFARE BENEFIT PLAN ADMINISTRATION DOCUMENT (OF
WHICH THE LONG TERM DISABILITY PLAN IS A PART),

      Defendant.

---

ORDER

---

This case arises under the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001 et seq.  It is a review on the record of the defendant's denial of

long term disability benefits under the terms of an insurance policy issued to the plaintiff, Scott

Hart, through his employer.  The briefing was completed with the filing of plaintiff's reply on

March 9, 2011.  The Court apologizes to the parties and counsel for the excessive delay.

**Facts**

In 2001 the plaintiff, Scott Hart, was working as a Senior Consultant for Capgemini,

Ernst & Young (Capgemini).  Capgemini offered long-term disability benefits to its employees

which were insured by Hartford Life Insurance Company (Hartford).  (R. 1-37).

Long Term Disability Benefits Policy

Under the Long Term Benefits Policy (Policy), Hartford had "full discretion and

authority to determine eligibility for benefits and to construe and interpret all terms and

1

provisions of the Group Insurance Policy." (R. 18.)  Benefits were payable under the Policy if an employee could show that: (1) he became disabled while insured under the plan; (2) he was disabled throughout the elimination period of the plan; (3) he remained disabled beyond the elimination period; (4) he was under the regular care of a physician during the elimination period and after; (5) and he submitted proof of loss satisfactory to the Plan.  (R. 9.)  The elimination period is the period of time a claimant must be disabled before benefits become payable and was defined as the first 180 consecutive days of disability.

Under the plan a person is disabled if he cannot perform one or more of the essential duties of his occupation, and as a result earns no more than 80% of his indexed pre-disability earnings.  (R. 19.)  The Policy clarified that "your occupation" is not limited to the specific job an employee is doing for a specific employer or at a specific location, but rather, "as it is recognized in the general workplace."  (R. 22.)

To file a claim, the Policy stated that "[i]f your disability continues beyond the duration of the elimination period, your claim for benefits will be considered under the LTD Plan provided that you continue to meet the requirements under the LTD Plan. . . . Hartford will initiate the paperwork needed for processing your LTD claim, however, it is your responsibility to complete and return any forms to Hartford in a timely manner."  (R. 402.)

Coverage under the Policy terminates the date an employee ceases to be an active full-time employee.  (R. 14.)

Mr. Hart's Long Term Disability Benefits Claim

In July of 2001 Mr. Hart began suffering from complications caused by pneumonia, including chest pain and shortness of breath.  On January 28, 2002 Mr. Hart stopped working and was approved for short term disability benefits.  (R. 995, 1385.)  However, on May 30, 2002

Hartford terminated Mr. Hart's benefits, effective April 28, 2002. (R. 995-997.) Mr. Hart

appealed this decision in July 2002. (R. 1389.) In his appeal, Mr. Hart included opinions from

Dr. Stevens and Dr. Matthews. Dr. Stevens opined that Mr. Hart's symptoms were "severe and

disabling." (R. 1377-78.) Dr. Stevens stated that Mr. Hart could perform a task for about two

hours before requiring rest and that he needed oxygen approximately twenty hours per day. (*Id.*)

Dr. Matthews completed a Physical Capacities Evaluation that stated that Mr. Hart could stand

and walk up to two hours at a time for a total of two to four hours a day and could sit for six to

eight hours at a time. (R. 1379.) Hartford denied Mr. Hart's appeal on August 6, 2002. (R.

1380-81.)

On July 30, 2002 Mr. Hart again saw Dr. Stevens. Dr. Stevens reported that Mr. Hart

was feeling quite a bit better, although he would still get very tired during the day. (R. 979-80.)

Further, Mr. Hart reported that he was feeling "pretty good" although he still did not feel that he

could breathe deeply, and still suffered a residual dull ache in his chest that worsened with

activity. (*Id.*) Mr. Hart also reported that he was exercising six days a week with 20 minutes on

the treadmill at four miles per hour at a 7-10% grade followed by twenty minutes on the

recumbent bike. (*Id.*) At this appointment Mr. Hart also discussed his willingness to return to

work in August when his leave under the Family Medical Leave Act ran out. (*Id.*) Dr. Stevens

supported Mr. Hart's willingness to return to work but noted that he would likely still need

oxygen in the afternoon. (*Id.*)

Mr. Hart returned to work on August 19, 2002. (R. 1376.) On August 27, 2002 Dr.

Stevens released Mr. Hart back to work saying "ok to return to full work duty effective 8/19/02."

(R. 969.) When Mr. Hart returned to work, he worked from home rather than visiting client

sites.  Mr. Hart argues that this was a severe limitation because he previously travelled

extensively for work.

In October 2002 Mr. Hart was again evaluated by Dr. Stevens.  At this appointment, Mr.

Hart said that he was doing "terrific."  (R. 968.)  Mr. Hart reported that he was working out fairly

intensely six days a week with 30 minutes of weights, 30 minutes of circuit training, 20 minutes

on a treadmill, and 20 minutes on a bike.  (*Id.*)  Although Mr. Hart still reported moments of no

energy, they were fewer and the chest pain was under control.  (*Id.*)  Mr. Hart had not yet

travelled for work, but felt that as long as he could have oxygen at night it would not be a

problem.  (*Id.*)  Dr. Stevens concluded that Mr. Hart was "much improved" from several months

before.  (*Id.*)

In October 2002 Mr. Hart's appeal of the termination of his short term disability benefits

was reviewed by an independent third party reviewer, Dr. Dribble.  (R. 1391-92.)  Dr. Dribble

concluded that Mr. Hart "demonstrated the physical capacity for the activities of his own job,

which is at the Sedentary level."  (R. 1392.)  Dr. Dribble determined that Mr. Hart's use of

oxygen might require some advance planning, but that Mr. Hart would still be able to travel

overnight.  (*Id.*)  Dr. Dribble also contacted Dr. Stevens who agreed that Mr. Hart was able to sit

at a desk.  (R. 1404.)  Mr. Hart's appeal was again denied.  Mr. Hart filed suit for his short term

benefits, and that suit was later settled.  (R. 236-242.)

Mr. Hart was laid off from his job at Capgemini in November 2002.

In October 2004 Mr. Hart was evaluated by Dr. Stevens.  Dr. Stevens determined that

"[s]ubjectively he is doing pretty well."  (R. 865.)  Dr. Stevens noted that Mr. Hart still struggled

with fatigue but could recognize and avert it, and that "[o]verall he is fairly pleased with the

quality of his life."  (*Id.*)  On January 19, 2005 Mr. Hart was admitted to the hospital because of

chest pain and shortness of breath.  (R. 624.)  Mr. Hart reported that these symptoms were

abnormal for him, because he was quite active and exercised regularly.  (*Id.*)  On January 28,

2005 Mr. Hart underwent aortic valve replacement and three vessel bypass surgery (R. 660.)

Following his heart surgery, Mr. Hart was diagnosed with an aortic valve that was congenitally

bicuspid.  (*Id.*)

Mr. Hart, through his attorney, contacted Hartford on January 27, 2005 and asked to

initiate a long term disability benefits claim. (R. 317.)  Hartford reviewed the claim and denied

Mr. Hart's benefits claim on September 15, 2005.  (R. 188-92.)  In its denial, Hartford explained

that it was not able to obtain detailed information from Mr. Hart's employer, because the

employer no longer had that information.  (R. 189.)  As a result, Hartford could not complete an

Occupational Analysis showing the essential duties of Mr. Hart's occupation.  (*Id.*)  However,

Hartford contacted Mr. Hart and discussed his job duties, and Hartford was also able to rely on a

job description that was provided by Mr. Hart's employer.  (R. 190.)  Based on this information,

Hartford determined that Mr. Hart's job was sedentary in nature, meaning that it involved sitting

most of the time, but walking or standing could also be included for brief periods of time.  (*Id.*)

After considering all of the evidence in the claim file, Hartford concluded that,

> Based on the lack of significant findings in extensive, objective medical work-ups by
> multiple doctors; your well-documented ability to exercise and workout during the
> Elimination Period; and the Physical Capabilities Evaluation dated 6/6/02 from Dr.
> Matthew stating you had the ability to sit up to 8 hours per day, and walk and stand up to
> 4 hours per day; we had concluded that you did not lack the functional capacity to
> perform the Essential Duties of Your Occupation, which appears to be Sedentary based
> on the information we were able to obtain.

(R. 191.)  The Policy stated that benefits were only available if a claimant was disabled

throughout and beyond the elimination period.  Because Hartford determined that Mr. Hart was

not disabled throughout the elimination period and beyond, it denied benefits.  (*Id.*)

Mr. Hart appealed and Hartford sent the appeal to a third-party reviewer, Dr. Sonne.  (R. 135-139.)  Dr. Sonne determined that there were no job limitations beyond July 29, 2002, the date that long term disability coverage would begin.  (R. 137.)  Hartford denied Mr. Hart's appeal in April 2006 and this lawsuit was filed in July 2007 in Denver District Court. Defendant's removed Mr. Hart's claims to this Court.

**Standard**

District court review of a denial or termination of benefits under ERISA is *de novo* unless the benefit plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989).  If discretionary authority exists, review is under an abuse of discretion (arbitrary and capricious) standard.  *Id.*  Under the abuse of discretion standard, the administrator's decision will be upheld "so long as it is predicated on a reasoned basis" and supported by substantial evidence.  *Adamson v. Unum Life Ins. Co.,* 455 F.3d 1209, 1212 (10th Cir. 2006).  Substantial evidence means "more than a scintilla but less than a preponderance." *Rekstad v. U.S. Bancorp.,* 451 F.3d 1114, 1119-20 (10th Cir. 2006).

The parties agree that the administrator had discretionary authority.  However, Mr. Hart argues that the review should be *de novo* because the defendants did not conform to ERISA's requirements of a timely response.  Specifically, Mr. Hart argues that his claim for short term disability benefits filed in February 2002 should have been converted into a claim for long term disability benefits.  Under this theory Mr. Hart filed for long term disability in 2002 but did not get a response until 2005 after he again filed for long term disability benefits.  Mr. Hart argues that his short term disability claim should have been converted into a long term disability claim, because the Policy stated "[i]f your disability continues beyond the duration of the elimination

period, your claim for benefits will be considered under the LTD Plan provided that you continue

to meet the requirements under the LTD Plan. . . . Hartford will initiate the paperwork needed for

processing your LTD claim, however, it is your responsibility to complete and return any forms

to Hartford in a timely manner." (R. 402.)  However, Hartford determined that Mr. Hart's

disability did not continue through the elimination period.  Rather, Hartford informed Mr. Hart

on May 30, 2002 that it had terminated his short term disability benefits in April 2002 because it

determined that he was not disabled.  The elimination period ran through July 2002.

Accordingly, it was not Hartford's responsibility to convert the short term disability claim into a

long term disability claim.  As such, Hartford did not violate ERISA's requirement of a timely

response; when Mr. Hart filed for long term disability benefits in 2005, Hartford timely

responded.  Thus, Hartford's decision will not be set aside, and an abuse of discretion standard is

appropriate.

**Conclusions**

Mr. Hart argues that Hartford's decision to deny him long term disability benefits was an

abuse of discretion.  Under the Policy, disability is defined as being unable to perform the

essential duties of the job, and to be eligible for benefits, a claimant must show that he was

disabled both during the 180 day elimination period and beyond.  In its denial of long term

disability benefits, Hartford explained that it did not believe that Mr. Hart was disabled

throughout the entire disability period and beyond because he could still perform the essential

duties of his job.  The opinion said that Hartford looked at the file as a whole including all of Mr.

Hart's medical records.  In particular the opinion relied on the lack of significant findings in

medical workups, Mr. Hart's ability to exercise daily, and the physical capabilities evaluation

that found the Mr. Hart could sit up to eight hours per day and walk or stand up to four hours per day.

The administrator's decision was predicated on a reasonable basis and supported by substantial evidence and therefore was not an abuse of discretion.  First, it was reasonable for the administrator to determine that Mr. Hart's job was sedentary.  Although Hartford was not able to complete an occupational analysis, the opinion explains that it relied upon Mr. Hart's job description as well as conversations with Mr. Hart that described his job duties.  This is substantial evidence that supports Hartford's conclusion that Mr. Hart's position was sedentary.

Next, the administrator determined that Mr. Hart was not disabled throughout the elimination period or beyond.  Based upon the information in the claim, there was substantial evidence to support this finding, and thus it was not an abuse of discretion.  Mr. Hart was able to return to work in August 2002 and continued working until he was laid off in November 2002.  Mr. Hart cites to Dr. Stevens' June 2002 letter that stated that Mr. Hart had symptoms that were "severe and disabling."  However, Dr. Stevens also released Mr. Hart back to work in August of 2002, saying that it was okay for Mr. Hart to perform all of his duties.  Further, in October 2002 Dr. Stevens concluded that Mr. Hart had "much improved" from months earlier.  Mr. Hart was also able to resume exercising, running, and riding a bike six days per week, and in October 2002 Mr. Hart reported to his doctor that although he had not yet traveled for work, he did not think that it would be a problem.  In October 2002, an outside medical doctor also reviewed Mr. Hart's medical records and determined that Mr. Hart was capable of performing his essential job duties.  There is substantial evidence in the record that Mr. Hart was not disabled in 2002, and therefore, the administrator's decision was not an abuse of discretion.

Mr. Hart also asserts that because he was diagnosed with an aortic valve that was congenitally bicuspid in 2005, that he was disabled in 2002.  Because the valve problem was a congenital problem, the underlying cause was present in 2002.  However, Mr. Hart has not presented any evidence to show that this bicuspid valve made him unable to perform the essential functions of his job in 2002.  On the contrary, when Mr. Hart was admitted to the hospital in 2005, he reported that the symptoms were abnormal for him.  Accordingly, it was reasonable for Hartford to determine that Mr. Hart's heart condition that was diagnosed in 2005 did not prevent him from performing the essential functions of his job in 2002.  Because Mr. Hart was laid off in November 2002, his coverage terminated at that time.  Therefore, any limitations that his heart condition caused in 2005 were not relevant for a finding of long term disability.  As such, Mr. Hart's bicuspid valve was not a basis for finding long term disability and Hartford did not abuse its discretion when it denied Mr. Hart long term disability benefits.

**Order**

Plaintiff's claim for benefits under ERISA is DENIED.  The Court enters its final written judgment dismissing the case with prejudice.  Defendant is awarded its costs per 29 U.S.C. § 1132(g)(1), Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 3rd day of December, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge